IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| LYNETTE CHRISTMAS, | * |
| Plaintiff, | * |
| vs. | *  CASE NO. 4:19-CV-53 (CDL) |
| HARRIS COUNTY, GEORGIA, *et al.*, | * |
| Defendants. | * |

O R D E R

Lynette Christmas alleges that former Harris County deputy sheriff Thomas Carl Pierson sexually assaulted her during a traffic stop. Christmas brought this action against Pierson under 42 U.S.C. § 1983 based on his alleged violations of her rights under the Fourth and Fourteenth Amendments to the United States Constitution. Christmas also asserts state law claims against Pierson. In addition, Christmas brought § 1983 and state law claims against Harris County and the Harris County Sheriff, Robert Michael Jolley. Presently pending before the Court are Defendants' motion to dismiss (1) all official capacity claims against Pierson and Jolley, (2) all individual capacity claims against Jolley, and (3) all claims against Harris County. As discussed in more detail below, the motion to dismiss (ECF No. 6) is granted in part and denied in part.

MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

FACTUAL ALLEGATIONS

Christmas alleges the following facts in support of her claims. The Court must accept these allegations as true for purposes of the pending motion.

On the afternoon of February 14, 2016, Pierson pulled Christmas over for speeding. Pierson was on duty and wearing his uniform, and he had his badge and firearm. Pierson flirted with Christmas, then gave her a warning. He asked Christmas to

2

drive up the road and turn right onto a deserted dirt road so he could speak to her "unfiltered." Compl. ¶ 16, ECF No. 1. Christmas drove past the dirt road; then Pierson activated the emergency equipment on his Harris County Sheriff's vehicle. When Christmas stopped, he instructed her to follow him to a more secluded location on a dirt road. Christmas complied. Once they stopped on the secluded dirt road, Pierson approached Christmas's vehicle and instructed her to exit. She did not. Pierson reached into her car, unlocked the door, took her by the arm, and removed her from the car. Christmas tried to return to her car, but Pierson pulled her from the car and led her to the front of his patrol vehicle. While still armed, Pierson forced Christmas to perform oral sex on him. Afterwards, Pierson released Christmas but warned her not to say anything. Christmas immediately went to the Pike County Sheriff's Office to report the assault. Pierson was later found guilty of sexual assault, false imprisonment, tampering with evidence, and violation of oath by a public officer.

Before his assault on Christmas, Pierson engaged in inappropriate behavior with at least two other women during traffic stops. Pierson told one woman that he would like to arrest her so he could look at her all day; then he followed her and placed her under surveillance "to harass and intimidate her." *Id.* ¶¶ 10-11. Pierson stopped another woman and detained

3

her for approximately forty-five minutes; during this time, he took her phone from her and began looking through it, showed her a video of him having sex with an unidentified female, and leaned into her window and brushed his hand against her breast. Later, Pierson "showed up at her home uninvited on at least two separate occasions in his Harris County Sheriff's Office patrol car." *Id.* ¶¶ 12-13.[1]

Christmas brought § 1983 claims against Pierson for violations of the Fourth and Fourteenth Amendments. She also asserts § 1983 claims against Harris County based on Jolley's policies and customs. And, Christmas asserts § 1983 claims against Jolley, alleging that Pierson had a persistent pattern of "engaging in sexually abusive conduct toward female citizens in the course and scope of his employment while in uniform, on the clock, and driving a Harris County Sheriff's Department Patrol Car." Compl. ¶ 44. Further, Christmas alleges that Pierson's prior misconduct of "sexually harassing and/or sexually assaulting two female citizens . . . demonstrates a history of abuse that put Jolley on notice of the need to correct the violations by Pierson but he failed to take any action." *Id.* ¶ 45. And, she alleges that Jolley "had reason to

---

[1] Pierson was also involved in an excessive force incident that resulted in Nicholas Dyksma's death. Sheriff Jolley knew about the incident but took no action against Pierson. *Id.* ¶ 31. Christmas asserts that Pierson would not have violated her constitutional rights if Jolley had not decided to retain him without any corrective action after that incident.

4

know that Pierson would act unlawfully but failed to stop him from doing so" and that he "had a policy or practice of not tracking officers who had already been accused of constitutional violations and allowing them to continue in their job." Compl. ¶¶ 46, 48. In addition to her § 1983 claims, Christmas asserts various state law claims against Pierson, Jolley, and Harris County.

DISCUSSION

I. **Official Capacity Claims Against Jolley and Pierson**

Christmas's official capacity claims against Jolley and Pierson are considered claims against the office of the Sheriff. *See Kentucky v. Graham*, 473 U.S. 159, 165–66, (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). Defendants argue that Christmas's § 1983 official capacity claims are barred by Eleventh Amendment immunity and that her state law official capacity claims are barred by Georgia sovereign immunity.

A. § 1983 Claims

Under the Eleventh Amendment to the U.S. Constitution, "[a] state is immune from a suit for damages in federal court by one of its own citizens." *Lake v. Skelton*, 840 F.3d 1334, 1337 (11th Cir. 2016) (quoting *Hans v. Louisiana*, 134 U.S. 1, 14–17

5

(1890)), *reh'g denied* 871 F.3d 1340 (11th Cir. 2017) (en banc). Eleventh Amendment immunity extends beyond actions that name a state directly as a party. It also protects "an official when he acts [in his official capacity] as an 'arm of the State.'" *Id.* at 1337 (quoting *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003 (en banc)). But this immunity "does not extend to counties and similar municipal corporations." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). In determining whether an official acts as an arm of the State when performing a particular function, the courts in this Circuit weigh four factors: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders*, 338 F.3d at 1309.

Christmas argues that the relevant function is the training, discipline, and retention of a deputy sheriff. Weighing the *Manders* factors, the Eleventh Circuit has concluded that a Georgia sheriff acts as an arm of the state "when exercising his power to hire and fire his deputies." *Pellitteri v. Prine*, 776 F.3d 777, 780-82 (11th Cir. 2015) (concluding that a prior panel was "mistaken" to find in an unpublished opinion that a Georgia sheriff did not act as an arm of the State when making personnel decisions regarding his deputies). The same rationale extends to a Georgia sheriff's personnel decisions

6

with regard to retaining his deputies.[2] With regard to discipline and training, the Eleventh Circuit has weighed the *Manders* factors and concluded that Georgia sheriffs are arms of the State when setting law enforcement policies and in training and disciplining their deputies on those policies.[3] *See Manders*, 338 F.3d at 1320-22, 1328 (finding that a sheriff's "law enforcement" duties are directly assigned and overseen by the State and concluding that a Georgia sheriff acts as an arm of the State "in establishing use-of-force policy at the jail and in training and disciplining his deputies in that regard"); *see also Mladek v. Day*, 293 F. Supp. 2d 1297, 1304 (M.D. Ga. 2003) (noting that "the Eleventh Circuit made it clear that it found no distinction between [implementation of a force policy in the operation of a county jail] and the law enforcement function performed by sheriffs when they arrest citizens for violations of the law"). In summary, based on Eleventh Circuit precedent, the Sheriff was an arm of the State with regard to the functions at issue here.

Christmas appears to argue that even if the Sheriff was an arm of the State, the Sheriff is not entitled to Eleventh Amendment immunity because the Georgia constitution provides

---

[2] Christmas urges the Court to "reconsider" *Pellitteri*. This Court, however, may not reconsider a ruling by the Court of Appeals.
[3] Pierson was engaged in a law enforcement function when he initiated the traffic stop, and he abused his law enforcement authority when he assaulted Christmas.

7

that the Georgia General Assembly may waive the state's sovereign immunity by enacting a state tort claims act. *See generally* Ga. Const. art. I, § 2, ¶ IX. But, the Georgia constitution specifically states that a waiver of sovereign immunity under ¶ IX is *not* a waiver of any immunity provided by the United States Constitution. *Id.* ¶ IX(f). And, the limited waiver of sovereign immunity in the Georgia Tort Claims Act is "only with respect to actions brought in the courts of the State of Georgia." O.C.G.A. § 50-21-23(b). "The state does not waive any immunity with respect to actions brought in the courts of the United States." *Id.* Furthermore, the Georgia Tort Claims Act only waives immunity for the State of Georgia, not for sheriffs or counties. *Carter v. Butts Cty., Ga.*, 821 F.3d 1310, 1323 (11th Cir. 2016). So, to the extent that Christmas argues that the Georgia constitution and the Georgia Tort Claims Act waive the Sheriff's Eleventh Amendment immunity as to § 1983 claims brought in federal court, that argument fails. The official capacity § 1983 claims against Jolley and Pierson are barred by Eleventh Amendment immunity and are therefore dismissed.

B. State Law Claims

"In Georgia, 'sovereign immunity extends to the state and all of its departments and agencies.'" *Id.* at 1323 (quoting Ga. Const. art. I, § 2, ¶ IX). "This includes sheriffs and

8

counties." *Id.* Thus, the Sheriff is entitled to sovereign immunity against the official capacity state law claims unless Christmas demonstrates that the Sheriff waived it. Christmas did not allege or argue that the Sheriff waived sovereign immunity for claims brought in federal court with regard to her official capacity state law claims.[4] Accordingly, her official capacity state law claims are dismissed.

## II. Claims Against Harris County

Christmas asserts § 1983 claims and state law claims against Harris County. Defendants argue that Christmas's § 1983 claims against Harris County must be dismissed because she did not allege that she suffered a constitutional deprivation caused by a Harris County policy and that her state law claims are barred by Georgia sovereign immunity.

### A. § 1983 Claims

A local government is liable under § 1983 only when its "official policy" causes a constitutional violation. *Monell*, 436 U.S. at 694. Thus, Christmas must show that she suffered a constitutional violation caused by "(1) an officially promulgated [Harris County] policy or (2) an unofficial custom or practice of [Harris County] shown through the repeated acts

---

[4] Christmas asserts that Georgia statutes waive sovereign immunity as to claims brought in Georgia courts for a sheriff's official actions when he is sued on his sheriff's bond. Christmas, however, does not allege any facts to suggest that she is suing the Sheriff on his bond. Even if she had, she did not argue or establish that any waiver of sovereign immunity extends to claims brought in federal court.

9

of a final policymaker for [Harris County]." *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

Christmas does not allege that Harris County has an official policy that led to her injuries. She does allege that Jolley was responsible for establishing various policies that apply to his deputies and that he failed to promulgate effective policies to prevent Pierson's assault of Christmas. For Harris County to be responsible for Jolley's policies and customs, Jolley must have been acting as a *Harris County* policymaker in establishing those policies. *Id.* at 1347. Christmas, however, does not allege a factual basis for concluding that Jolley was the final policymaker *for Harris County* with regard to any of the policies at issue here. Rather, as discussed above, Jolley is an arm of the State in establishing such policies, so his "policy or practice cannot be said to speak for [Harris County] because [Harris County] has no say about that policy or practice." *Id.* The Court therefore grants Harris County's motion to dismiss Christmas's § 1983 claims against it.

B. <u>State Law Claims</u>

As discussed above, Georgia counties are entitled to sovereign immunity unless there has been a waiver. *Carter*, 821 F.3d at 1323. Even if Christmas had alleged that Pierson was employed by Harris County (and not the Sheriff) or that a Harris County policy caused her injuries, Christmas did not allege or

10

argue that Harris County waived its sovereign immunity for her state law claims. Accordingly, her state law claims against Harris County are dismissed.

**III. Individual Capacity Claims Against Jolley**

Christmas asserts individual capacity claims against Jolley based on his supervision and retention of Pierson. Jolley argues that he is entitled to qualified immunity on the § 1983 claims and official immunity on the state law claims.

A. § 1983 Claim

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quoting *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003)). In deciding whether to grant qualified immunity on a motion to dismiss, the Court must accept "the factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor." *Davis v. Carter*, 555 F.3d 979, 981 (11th Cir. 2009) (quoting *Dalrymple*, 334 F.3d at 994).

"A defendant who asserts qualified immunity has the initial burden of showing he was acting within the scope of his discretionary authority when he took the allegedly

unconstitutional action." *Gates*, 884 F.3d at 1297. If the defendant makes this showing, "the burden shifts to the plaintiff to establish that qualified immunity is not appropriate by showing that (1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right at issue was clearly established at the time of the alleged misconduct." *Id.* Christmas argues that Jolley's duties at issue here—promulgating use of force policies and supervising deputies—were ministerial, not discretionary. But, Jolley was engaged in legitimate job-related functions within the scope of his authority when he promulgated his use of force policies and supervised Pierson, so he was acting within the scope of his discretionary authority. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265-67 (11th Cir. 2004) (explaining "discretionary authority" in the qualified immunity context).

The next question is whether Christmas adequately alleged that Jolley violated clearly established law. To meet this burden, Christmas must allege a factual basis for finding both that Pierson's actions violated a clearly established constitutional right and that it was clearly established that a supervisor would be liable for Pierson's constitutional violations under the circumstances. Jolley does not dispute that Christmas adequately alleged that Pierson violated Christmas's clearly established constitutional rights when he

stopped and sexually assaulted her. It has long been clearly established that an investigative stop "performed without reasonable suspicion violates the Fourth Amendment." *Childs v. Dekalb Cty., Ga.*, 286 F. App'x 687, 695 (11th Cir. 2008) (per curiam). Here, based on Christmas's allegations, even if Pierson's initial traffic stop was lawful, it ended. Then, Pierson stopped Christmas a second time without any legitimate reason, and he sexually assaulted her. And, even if Pierson had a valid reason for the second stop, it has long been clearly established that significant force that is "wholly unnecessary to any legitimate law enforcement purpose" is excessive and thus not permitted under the Fourth Amendment. *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002). When Pierson committed the crime of sexual assault, he used force that was undeniably far beyond the bounds of any possible legitimate use of force. Thus, Christmas plausibly alleged a violation of her clearly established Fourth Amendment rights. *Cf. Hope v. Pelzer*, 536 U.S. 730, 745 (2002) (concluding that officials were on notice that their conduct violated clearly established law even without a case directly on point based on the "obvious cruelty inherent in" the officers' practices and the fact that the plaintiff "was treated in a way antithetical to human dignity").

Jolley does argue that Christmas did not allege a factual basis for a § 1983 supervisory liability claim. Supervisory

officials like Jolley "are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" *Id.* (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)). "Alternatively, the causal connection may be established when a supervisor's 'custom or policy . . . result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (quoting *Gonzalez*, 325 F.3d at 1234-35) (alterations in original).

Christmas does not allege any facts to suggest that Jolley was personally involved in the traffic stop or that he directed

14

Pierson to act unlawfully, but she does allege other facts that, if proved, would establish her supervisory liability claim against Jolley. First, she alleges that Jolley knew of Pierson's "persistent pattern" of "engaging in sexually abusive conduct toward female citizens in the course and scope of his employment while in uniform, on the clock, and driving a Harris County Sheriff's Department Patrol Car." Compl. ¶ 44. Second, she alleges that Pierson's prior misconduct of "sexually harassing and/or sexually assaulting two female citizens . . . demonstrates a history of abuse that put Jolley on notice of the need to correct the violations by Pierson but he failed to take any action." *Id.* ¶ 45. Third, she alleges that Jolley "had reason to know that Pierson would act unlawfully but failed to stop him from doing so" and that Jolley "had a policy or practice of not tracking officers who had already been accused of constitutional violations and allowing them to continue in their job." *Id.* ¶¶ 46, 48.

Contrary to Jolley's assertion, Christmas does not allege that Jolley only learned of Pierson's prior inappropriate conduct toward women after the Georgia Bureau of Investigation exposed it. Rather, taking the allegations as true and drawing all reasonable inferences in Christmas's favor as the Court must do at this stage in the litigation, Christmas alleges that Jolley knew of Pierson's inappropriate conduct before February

15

14, 2016 but did nothing to keep Pierson from continuing to violate the clearly established rights of female motorists. In light of the clearly established law that law enforcement officers may not detain a citizen for the illegitimate purpose of sexually harassing or assaulting her, no reasonable person in Jolley's position could have believed that doing nothing in light of Pierson's past conduct was lawful. *Cf. Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir. 1995) (affirming denial of qualified immunity to a supervisor in a § 1983/equal protection action where the supervisor did nothing in response to a subordinate's sexual harassment, discrimination, and creation of a hostile work environment for the employee's female colleagues). The Court therefore denies Jolley's motion to dismiss based on qualified immunity. The Court further finds that these allegations are sufficient to suggest that Jolley had a reckless or callous indifference to her federally protected rights, so the Court declines to dismiss her claim for punitive damages against him at this time.

Jolley argues that even if he is not entitled to qualified immunity, the Court should dismiss Christmas's claims as untimely under the applicable statute of limitations. Christmas's § 1983 claims are subject to the two-year limitations period "set forth in O.C.G.A. § 9-3-33 for personal

injuries." *Williams v. City of Atlanta*, 794 F.2d 624, 626 (11th Cir. 1986). The assault occurred on February 14, 2016, and Jolley argues that Christmas's action is untimely because she did not file her Complaint until March 28, 2019. Christmas contends that her cause of action is tolled under O.C.G.A. § 9-3-99. The Court agrees. O.C.G.A. § 9-3-99 provides: "The running of the period of limitations with respect to any cause of action in tort that may be brought by the victim of an alleged crime which arises out of the facts and circumstances relating to the commission of such alleged crime committed in this state shall be tolled from the date of the commission of the alleged crime or the act giving rise to such action in tort until the prosecution of such crime or act has become final or otherwise terminated, provided that such time does not exceed six years[.]" Defendants urge the Court to construe the statute as applying only to claims filed against the alleged perpetrator of the crime. The Georgia Court of Appeals, however, rejected that construction and held that O.C.G.A. § 9-3-99 "applies regardless of whether the defendant in the case has been accused of committing the crime from which the cause of action arises." *Harrison v. McAfee*, 788 S.E.2d 872, 879 (Ga. Ct. App. 2016) (en banc) (concluding that the statute was tolled for the plaintiff's claims against a bar based on the injuries he sustained when a masked man shot him there). Here, the

prosecution of Pierson did not become final before August 30, 2017, when he was found guilty of the crimes he committed against Christmas and others. Christmas filed this action within two years of that date. It is timely.

B. State Law Claims

Jolley argues that he is entitled to official immunity on Christmas's state law claims. Law enforcement officers are entitled to official immunity on tort claims against them for their discretionary acts unless they acted "with actual malice or with actual intent to cause injury." *Kidd v. Coates*, 518 S.E.2d 124, 125 (Ga. 1999) (quoting Ga. Const. Art. 1, § 2, ¶ IX(d)). "The phrase 'actual intent to cause injury' has been defined in a tort context to mean 'an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury.'" *Id.* (quoting *Frame v. Boatmen's Bank*, 782 S.W.2d 117, 121 (Mo. App. 1989)).

Here, Christmas's state law claims against Jolley are for inadequate hiring, retention, training, and supervision. These functions are discretionary, not ministerial as Christmas argues. *Russell v. Barrett*, 673 S.E.2d 623, 629 (Ga. Ct. App. 2009) (finding that operation of a sheriff's department, including the training and supervision of deputies, is a discretionary function). Although the facts alleged in the Complaint can be construed to support a plausible claim that

Jolley had a reckless or callous indifference to female motorists' federally protected rights, the facts alleged do not support a plausible claim that he acted with actual malice or an actual intent to injure Christmas when he decided to retain Pierson as a deputy. Accordingly, the Court grants Jolley's motion to dismiss Christmas's individual capacity state law claim against him.

CONCLUSION

As discussed above, Defendants' motion to dismiss (ECF No. 6) is granted in part and denied in part. The Court dismisses all claims against Jolley and Pierson in their official capacities; all claims against Harris County; and the state law claim against Jolley in his individual capacity. The § 1983 individual capacity claims against Jolley are *not* dismissed, and those claims, along with all individual capacity claims against Pierson, may go forward.

IT IS SO ORDERED, this 9th day of August, 2019.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA